No. 24-40137

# United States Court of Appeals for the Fifth Circuit

UNITED STATES OF AMERICA,

    *Plaintiff-Appellant*,

v.

ALI DANIAL HEMANI,

    *Defendant-Appellee*.

On Appeal from the United States District Court
for the Eastern District of Texas, Sherman Division
No. 4:23-CR-18-1

**APPELLANT UNITED STATES OF AMERICA'S RESPONSE IN OPPOSITION TO HEMANI'S MOTION FOR SUMMARY AFFIRMANCE**

    Ali Danial Hemani has filed a motion for summary affirmance of the district court's order granting Hemani's motion to dismiss the indictment on the ground that 18 U.S.C. § 922(g)(3) is unconstitutional as applied to him. While the government recognizes that this Court's decision in *United States v. Daniels*, 77 F. 4th 337 (5th Cir. 2023), *currently* forecloses the arguments advanced in the government's opening brief, summary affirmance is inappropriate at this stage

1

given that, as of this writing, the government's petition for writ of certiorari in *Daniels* remains pending before the Supreme Court.[1] This Court should wait until the Supreme Court resolves the petition in *Daniels* before deciding this case. This is especially so because, as explained in more detail below, the Supreme Court's recent decision in *United States v. Rahimi*, No. 22-915 (2024 WL 3074728 (June 21, 2024), is in tension with *Daniels* and clarified the analytical framework governing Second Amendment challenges.

In *Rahimi*, the Supreme Court upheld Section 922(g)(8) under the Second Amendment, reversing this Court's decision finding Section 922(g)(8) unconstitutional on its face. The Supreme Court explained that "[s]ince the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms." 2024 WL 3074728, at *5. Those provisions include surety laws, which authorized magistrates to "require individuals suspected of future misbehavior to post a bond," and going armed laws, which "provided a mechanism for punishing those who had menaced others with firearms." *Id*. at **8-9. The court concluded that "[t]aken

---

[1] According to the Supreme Court's docket sheet in *Daniels*, No. 23-376, on June 28, 2024, the case was distributed for conference on July 1, 2024. *See* https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/23-376.html.

together, the surety and going armed laws confirm" that "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id*. at *9. The Court acknowledged that "Section 922(g)(8) is by no means identical to these founding era regimes," but it explained that "it does not need to be": Section 922(g)(8)'s "prohibition on the possession of firearms by those found by a court to present a threat to others fits neatly within the tradition the surety and going armed laws represent." *Id*.

In reaching its decision, the Court clarified that its Second Amendment precedents do not demand "a law trapped in amber"; the Second Amendment "permits more than just those regulations identical to ones that could be found in 1791." *Id*. at *6. As Justice Barrett emphasized in concurrence, "imposing a test that demands overly specific analogues has serious problems," including "forc[ing] 21st- century regulations to follow late-18th-century policy choices," and "assum[ing] that founding-era legislatures maximally exercised their power to regulate." *Id*. at *30 (Barrett, J., concurring).

Accordingly, the Court explained that, when assessing whether a law complies with the Second Amendment, courts should consider "whether the challenged regulation is consistent with the *principles* that underpin our regulatory tradition" by ascertaining "whether the new law is 'relevantly similar' to laws that our tradition is understood to permit." *Id*.

3

(emphasis added). Under this standard, "if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations." *Id*. But even "when a challenged regulation does not precisely match its historical precursors, 'it still may be analogous enough to pass constitutional muster,'" so long as the law "comport[s] with the principles underlying the Second Amendment." *Id*.

*Rahimi* thus undermines this Court's decision in *Daniels*, which held that Section 922(g)(3) is unconstitutional as applied to a regular marijuana user. *Daniels* drew its analytical approach from the now-reversed panel opinion in *Rahimi* and consequently incorporated many of the methodological flaws that the Supreme Court identified in reversing that panel opinion. *See Daniels*, 77 F.4th at 344-55. For example, although *Daniels* correctly determined that the government need only identify "relevantly similar" historical analogues to justify Section 922(g)(3), *id*. at 343-44, it faulted the government for failing to identify a founding-era statute that prohibited firearm possession between periods of active intoxication, *id*. at 345-46, 347-48. This approach conflicts with *Rahimi*'s focus on using historical context to identify a "principle that underpins the Second Amendment," and effectively demands a "historical twin" of the sort that *Bruen* and *Rahimi* disclaimed. *Rahimi*, 2024 WL 3074728, at *6. It also fails to

4

account for the dispositive distinction between lawful alcohol use that preoccupied the founders and the widespread unlawful use of controlled substances, unprecedented at the founding, that Section 922(g)(3) addresses.

For these and other reasons, the government maintains that *Daniels* was wrongly decided and has petitioned the Supreme Court for review. The government's petition in *Daniels* remains pending but should be decided soon. Summary affirmance is therefore inappropriate at this stage. Rather, the Court should wait to decide this case until the Supreme Court acts on the pending cert petition in *Daniels*.

The Court should deny Hemani's motion for summary affirmance.

Respectfully submitted,

*/s/ Bradley Visosky*
BRADLEY VISOSKY
  Assistant U.S. Attorney
  Eastern District of Texas
  101 E. Park Blvd., Suite 500
  Plano, Texas, 75074
  (972) 509-1201

### CERTIFICATE OF SERVICE

I certify that on July 1, 2024, a copy of this response will be served on counsel for appellee through use of the Court's CM/ECF system.

*/s/ Bradley Visosky*
Bradley Visosky

### CERTIFICATE RELATED TO FIFTH CIRCUIT RULE 25.2

I certify under Fifth Circuit Rule 25.2 that: (1) all required privacy redactions have been made from the foregoing motion; and (2) the electronically-submitted document has been scanned for viruses with the most recent version of commercially available virus scanning software and is free of viruses.

/s/ *Bradley Visosky*
Bradley Visosky

### CERTIFICATE OF COMPLIANCE

I certify that the foregoing response was prepared in a 14-point, proportionally spaced, serif font using Microsoft Word 2016; the response contains 829 words, excluding the parts exempted by Fed. R. App. P. 32(f); and, accordingly, the response complies with Fed. R. App. P. 27(d).

/s/ *Bradley Visosky*
Bradley Visosky