**No. 24-40137**

United States Court of Appeals
for the Fifth Circuit

United States of America,

Plaintiff-Appellant,

v.

Ali Danial Hemani,

Defendant-Appellee,

On Appeal from the United States District Court
for the Eastern District of Texas, Sherman Division
Case No. 4:23-cr-18-1

**Brief of Appellee**

David C. Boyer
Newland Legal, PLLC
P.O. Box 1413
Midlothian, Texas 76065
(469) 899-9664
David@newlandlegal.com
Texas Bar No. 24136752

Zachary L. Newland
Newland Legal, PLLC
P.O. Box 3610
Evergreen, Colorado 80437
(303) 948-1489
Zach@newlandlegal.com
Texas Bar No. 24088967

*Attorneys for Ali Hemani*

# Certificate of Interested Persons

I, David Boyer, attorney of record for Appellee Ali Danial Hemani ("Mr. Hemani"), pursuant to Rule 26.1(a) of the Federal Rules of Appellate Procedure, certify that to the best of my knowledge the below is a list of all parties and entities that may have an interest in the outcome of this case. This list is provided for the judges of this Court to determine any conflicts that may exist and in order to evaluate possible disqualification or recusal:

1.  Hon. Amos L. Mazzant, III, U.S. District Judge

2.  Hon. Kimberly C. Priest Johnson, U.S. Magistrate Judge

3.  United States of America, Appellant

4.  Counsel for Appellant:

    Heather Harris Rattan, Assistant U.S. Attorney (in the district court)

    Maureen E. Smith, Assistant U.S. Attorney (in the district court)

    Bradley Visosky, Assistant U.S. Attorney (on appeal)

5.  Ali Danial Hemani, Appellee

6.  Counsel for Appellee:

    David C. Boyer (on appeal)

    Zachary L. Newland (on appeal)

Camille M. Knight (in the district court)

Carl David Medders (in the district court)

Brain George O'Shea (in the district court)

Michael John Pannitto (in the district court)

Dated: August 26, 2024

/s/ David C. Boyer

## Statement Regarding Oral Argument

Appellee respectfully requests oral argument concerning the issues raised herein. Appellee submits that the issue presents important questions of Constitutional and/or procedural dimensions and believes this Court would be aided in its deliberation by the presence of counsel to comment upon the issue and respond to inquiries from the Court.

# Table of Contents

Certificate of Interested Persons ................................................. i

Statement Regarding Oral Argument ......................................... iii

Table of Contents ..................................................................... iv

Table of Authorities ................................................................. vi

Statement of Jurisdiction ........................................................... 1

Statement of the Case ................................................................ 1

Summary of the Argument ........................................................ 4

Argument .................................................................................... 6

   I.  Standard of Review ......................................................... 6

  II.  18 U.S.C. § 922(g)(3) is unconstitutional as applied to Mr.
      Hemani ............................................................................. 6

      A.  The Second Amendment applies to Mr. Hemani ...................... 7

      B.  The Government has failed to demonstrate that § 922(g)(3) is
          consistent with the Nation's historical tradition of firearm
          regulation ........................................................................ 9

          1. No relatively similar law put forward ................................. 9

          2. Responsible citizen argument is foreclosed ....................... 12

III. *Daniels* was decided correctly, and *Rahimi* does not change this Court's analysis ............................................................................. 15

    A. Due process concerns persist in this case ................................. 17

IV. Even if *Daniels* is overturned, Mr. Hemani's as-applied challenge is distinguishable from *Daniels* and should be affirmed ............ 19

Conclusion .................................................................................................. 21

Certificate of Service .................................................................................. 22

Certificate of Compliance ........................................................................... 22

# Table of Authorities

**Cases**

*California v. Carney*, 471 U.S. 386 (1985)............................................... 19

*District of Columbia v. Heller*, 554 U.S. 570 (2008)............ 7, 8, 10, 17, 19

*Kenemore v. Roy*, 690 F.3d 639 (5th Cir. 2012)....................................... 15

*Lange v. California*, 594 U.S. 295 (2021) .................................................2-

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) ....................................................................................... *passim*

*United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023).................. *passim*

*United States v. Daniels*, 2024 WL 3259662 (July 2, 2024) .................... 3

*United States v. Perez-Macias*, 335 F.3d 421 (5th Cir. 2003).................. 6

*United States v. Rahimi*, 144 S.Ct. 1889 (2024) ............................ *passim*

**Statutes**

18 U.S.C. § 3731 ....................................................................................... 1

18 U.S.C. § 3742(b) ................................................................................... 1

18 U.S.C. § 922(g)(3)........................................................................ *passim*

18 U.S.C. § 922(g)(8)....................................................... 2, 3, 15, 17, 18, 20

28 U.S.C. § 1291 ....................................................................................... 1

**Rules**

Fed. R. App. P. 26.1(a).............................................................. i

Fed. R. App. P. 32 ................................................................. 22

**Constitutional Provisions**

U.S. CONST. amend. II................................................................. 7

## Statement of Jurisdiction

The Government's statement of jurisdiction is inaccurate. This Court has general jurisdiction under 28 U.S.C. § 1291; however, the Government cites 18 U.S.C. § 3742(b) which is the review of a final sentence. (Br. of Appellant at 1). Jurisdiction is proper under 18 U.S.C. § 3731.

## Statement of the Case

On February 8, 2023, a federal grand jury sitting in the Eastern District of Texas returned a one-count Indictment which charged Mr. Hemani with possession of a firearm by a user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3). [ROA.12–13]. Mr. Hemani moved to dismiss the Indictment on February 15, 2023, and challenged § 922(g)(3) as unconstitutionally vague in light of the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). [ROA.28–41].

U.S. Magistrate Judge Kimberly C. Priest Johnson issued a Report and Recommendation that Mr. Hemani's motion to dismiss the Indictment be granted on July 31, 2023, and concluded that § 922(g)(3) is unconstitutional after *Bruen*. [ROA.224–252]. Before the district court

could act on the Magistrate's Report and Recommendation, this Court issued its opinion in *United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023), which found 18 U.S.C. § 922(g)(3) unconstitutional in an as-applied challenge. The Government objected to the Report and Recommendation on the grounds that Mr. Hemani did not raise an as-applied constitutional challenge to the statute. [ROA.272–279].

Mr. Hemani amended his motion to dismiss and raised an as-applied challenge to § 922(g)(3) relying on this Court's decision in *Daniels*. [ROA.292–297]. In response, the Government conceded that dismissal of the Indictment was appropriate, but reserved the right to appeal. [ROA.299].

On February 1, 2024, the district court entered an agreed order dismissing the Indictment on the ground that 18 U.S.C. § 922(g)(3) was unconstitutional as applied to Mr. Hemani. [ROA.347–348]. The Government filed its notice of appeal on February 29, 2024. [ROA.349].

While this appeal was pending, the Supreme Court reversed this Court's prior decision in *United States v. Rahimi*, 602 U.S. __, 144 S.Ct. 1889 (2024). At issue in *Rahimi* was the constitutionality 18 U.S.C. § 922(g)(8), which prohibits the possession of firearms by individuals

subject to a domestic violence retaining order. *Id.* at 1894. The Supreme Court concluded that § 922(g)(8) was constitutional on its face and as applied to Rahimi. *Id.* at 1896–97. The Supreme Court granted *certiorari* in *Daniels*, vacated the judgment, and remanded to this Court for further consideration in light of *Rahimi. United States v. Daniels*, __ S.Ct. __, No. 23-376, 2024 WL 3259662 (July 2, 2024).

## Summary of the Argument

18 U.S.C. § 922(g)(3) is unconstitutional as applied to Mr. Hemani, and the Court should affirm the district court's order dismissing the indictment. Under the test set forth in *Bruen* and refined in *Rahimi*, Mr. Hemani is of the people covered by the Second Amendment. Accordingly, the statute presumptively impinges Mr. Hemani's constitutional rights.

Under *Bruen*, the Government bears the burden of demonstrating section 922(g)(3) is premised on this Nation's historical tradition of firearm regulation. The Government has failed to carry that burden by offering a single historical analogue that matches the "why" and "how" of § 922(g)(3)'s regulation. The entirety of the Government's argument is that the entire class of "unresponsible" non-law-abiding citizens are exempt from the protections guaranteed by the Second Amendment. This concept has been rejected repeatedly by the Supreme Court and explicitly renounced in *Rahimi*. Since the Government has not carried its burden of demonstrating that section 922(g)(3) is rooted in the Nation's historic tradition of firearm regulations, this Court must conclude that § 922(g)(3) is unconstitutional as applied to Mr. Hemani's case and affirm the district court's order.

In addition, the Supreme Court's decision in *Rahimi* and remand of *Daniels* does not affect the constitutional analysis of Mr. Hemani's as-applied challenge to § 922(g)(3). Mr. Hemani submits that *Daniels* was decided correctly by this Court, and that remand to consider *Rahimi* will have no effect on the *Daniels'* Court's holding. Nonetheless, if this Court does overturn *Daniels* on remand, Mr. Hemani can still demonstrate that 18 U.S.C. § 922(g)(3) is unconstitutional as applied to him.

Accordingly, this Court should affirm the district court's order dismissing the indictment in Mr. Hemani's case.

**Argument**

## I.   Standard of Review

This Court reviews the constitutionality of a statute *de novo*. *United States v. Perez-Macias*, 335 F.3d 421, 425 (5th Cir. 2003).

## II.   18 U.S.C. § 922(g)(3) is unconstitutional as applied to Mr. Hemani.

The Government has failed to meet its burden to present sufficient proof that the "Nation's historical tradition of firearm regulation" supports the restrictions set forth in 18 U.S.C. § 922(g)(3) on Mr. Hemani's Second Amendment rights. *Bruen* 597 U.S. at 24. In *Bruen*, the Supreme Court rejected the means-end scrutiny approach and adopted a two-step inquiry to determine the constitutionality of regulations bearing on the Second Amendment:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id*. at 24.

## A. The Second Amendment applies to Mr. Hemani.

The threshold question then is whether the Second Amendment applies to Mr. Hemani. The right to bear arms is held by "the people." U.S. CONST. amend. II. The people "unambiguously refers to all members of the political community, not an unspecified subset." *District of Columbia v. Heller*, 554 U.S. 570, 580 (2008). Under *Heller*, "the Second Amendment right is exercised individually and belongs to *all* Americans." *Id*. at 581 (emphasis added). Mr. Hemani is a member of the political community and therefore has a presumptive right to bear arms.

Relying on *Heller*, the Government argues that the right to keep and bear arms only belongs to "law-abiding, responsible citizens." (Brief of Appellee at 7) (quoting *Heller*, 554 U.S. at 635). The Government continues that under *Bruen*, "the government may properly disarm citizens who are dangerous, irresponsible, or unlikely to abide by the law." *Id*. at 8. However, the Supreme Court expressly rejected the Government's "responsible citizen" argument in *United States v. Rahimi*:

> [W]e reject the Government's contention that Rahimi may be disarmed simply because he is not "responsible." "Responsible" is a vague term. It is unclear what such a rule would entail. Nor does such a line derive from our case law. In *Heller* and *Bruen*, we used the term "responsible" to describe the class of ordinary citizens who undoubtedly enjoy

the Second Amendment right. *See, e.g., Heller*, 554 U.S., at 635, 128 S.Ct. 2783; *Bruen*, 597 U.S., at 70, 142 S.Ct. 2111. But those decisions did not define the term and said nothing about the status of citizens who were not "responsible."

*United States v. Rahimi*, 144 S.Ct. at 1903. Chief Justice Roberts was not alone in rejecting the Government's "responsible citizen" argument. In Justice Gorsuch's concurrence, he wrote:

> Nor do we purport to approve in advance other laws denying firearms on a categorical basis to any group of persons a legislature happens to deem, as the government puts it, "not 'responsible.' *Ante*, at 1903 (quoting Brief for the United States 6); *see* Tr. of Oral Arg. 31–32; *see also post*, at 1944 (opinion of THOMAS, J.) ("Not a single Member of the Court adopts the Government's theory").

*Id.* at 1910 (Gorsuch, J., concurring). As Justice Gorsuch hinted, Justice Thomas' dissent held the same sentiment:

> The Government's proposed justification is also far too general. Nearly all firearm regulations can be cast as preventing "irresponsible" or "unfit" persons from accessing firearms. In addition, to argue that a law limiting access to firearms is justified by the fact that the regulated groups should not have access to firearms is a logical merry-go-round. As the Court has made clear, such overly broad judgments cannot suffice.

*Id.* at 1938 (Thomas, J., dissenting).

As such, Mr. Hemani is of "the people" and has a presumptive right to bear arms under the Second Amendment, and 18 U.S.C. § 922(g)(3) infringes on that right.

**B.**     **The Government has failed to demonstrate that § 922(g)(3) is consistent with the Nation's historical tradition of firearm regulation.**

The second prong of *Bruen's* test requires the Government to justify § 922(g)(3)'s regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. *Bruen*, at 24. If the Government cannot meet this burden, the regulation is unconstitutional.

### 1. No relatively similar law put forward

The Supreme Court recently provided additional guidance on the second half of *Bruen's* test. *Rahimi*, at 1897–98. As the Supreme Court explained, "A court must ascertain whether the new law is 'relatively similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances." *Id*. at 1989 (quoting *Bruen*, at 29). The how and why of the regulation are central to this inquiry. *Id*. The Supreme Court was clear that the law need not be a "historical twin" to be constitutional. *Id*.

However, the historical precursor must "still [ ] be analogous enough to pass constitutional muster." *Id*. (quoting *Bruen*, at 30).

The Government's brief provides a history of firearms regulation from English law to modern restrictions. However, none of the regulations discussed by the Government are remotely analogous to § 922(g)(3). The Government's principal argument is that (1) unlawful drug users are not law-abiding, responsible citizens, and (2) Congress may disarm individuals who are not law-abiding, responsible citizens. (Br. of Appellant at 7–18). But, as discussed above, the Supreme Court thoroughly rejected the advancement of the Government's "responsible citizen" argument in determining whether an individual can be stripped of their Second Amendment right. *Rahimi*, at 1903.

Neither *Heller*, *Bruen*, nor *Rahimi* approve of the notion that the Government may place a wholesale restriction on firearms for a class of individuals deemed "not law-abiding, responsible citizens." What is left of the Government's *Bruen* analysis then is a collection of firearm regulations that are wholly disanalogous to 18 U.S.C. § 922(g)(3), which prohibits the possession of firearms by any person "who is an unlawful user [of a controlled substance] or addicted to any controlled substance."

18 U.S.C. § 922(g)(3). Put simply, none of those laws are "relatively similar" to the one at issue in this case.

Indeed, every source of law cited by the Government from English law through post-founding, the Civil War, and Ratification involve restrictions on individuals deemed dangerous to society, unloyal, or unpeaceful.[1] The Government recites additional regulations that have disarmed loyalists, "going armed" laws, surety laws, and restrictions on the sale of arms below specified ages. (Br. of Appellant at 18–20). Again, per the Government, the only common theme among these laws is that they are aimed at restricting firearm use by "irresponsible" persons; precisely the argument that has since been repeatedly rejected by the Supreme Court.

The Government's brief essentially provides a history in firearms regulations starting in the 1600s and continuing all the way through the 1990s. It cites laws as obscure as mishandling gunpowder and as

---

[1] The Government also includes media commentary from the late 19th century on firearms restrictions. (Br. of Appellant at 17). Obviously, as it is today, commentary from the media is a far cry from active legislation and has no impact whatsoever on the *Bruen* analysis. This argument carries as much weight as citing *Reefer Madness* (G&H Productions 1936) as evidence of the danger marijuana users pose to society.

irrelevant as the age one could purchase a firearm. Despite the lengthy history lesson, the Government has not identified a single historical precursor to 18 U.S.C. § 922(g)(3). It has not sought to explain the why and how this plethora of legislative history is analogous to the purpose behind § 922(g)(3). It has not met its burden of providing a historical analogue to support § 922(g)(3)'s infringement on the Second Amendment. The Government has not met its burden under *Bruen* of establishing § 922(g)(3) is constitutional as applied to Mr. Hemani.

## 2. Responsible citizen argument is foreclosed

Nonetheless, the Government maintains that § 922(g)(3) "fits within this history and tradition because it disarms persons who are not law-abiding, responsible citizens." This argument carries no weight after *Rahimi*. Moreover, while *Rahimi* clarified what laws qualify as historical analogues under *Bruen*, the why and how of these regulations must at least be similar enough to pass constitutional muster. None of the regulations cited by the Government meet this test. Instead, the Government engages in a means-end analysis to argue that all unlawful drug users or addicts pose a danger to society. This means-end analysis is the exact type of scrutiny the Supreme Court has expressly rejected.

*Bruen*, at 24. As the Supreme Court has made clear, the Second Amendment is no longer relegated to this second-tier balancing test among lesser constitutional rights.

Under the Government's extraordinarily broad interpretation, any individual who breaks the law can be constitutionally deprived of their Second Amendment rights. If, for example, forfeiture of firearms for unsafe storage of gunpowder is a historical analogue to a complete prohibition on drug users possessing firearms, then virtually any offense deemed "irresponsible" would be subject to Second Amendment restrictions. Under this logic, it would be constitutional to restrict gun possession of individuals who break the speed limit. Speeding in a motor vehicle can certainly be seen as irresponsible, dangerous to society, and not abiding by the law.

Put simply, the Government's panoply of historic firearms regulations does exactly what the Supreme Court warned against:

> [B]ecause everything is similar in infinite ways to everything else, one needs some metric enabling the analogizer to assess which similarities are important and which are not. For instance, a green truck and a green hat are relatively similar if one's metric is things that are green. They are not relevantly similar if the applicable metric is things you can wear.

*Bruen*, at 29 (internal quotations marks and citations omitted) (cleaned up).

Notably missing from any of the Government's analogies is a single restriction aimed at prohibiting the possession of firearms by unlawful drug users or addicts. The closest the Government gets to the why and how of § 922(g)(3) is a single regulation from California passed in 1855 disarming "common drunkards[2]." (Br. of Appellant, at 29 n. 28). But even the Government recognizes a single regulation well after the founding from one state is not sufficient to meet the *Bruen* test given its passing reference to the act in its brief.

The Government has failed to offer a single historical analogue to support the constitutional application of 18 U.S.C. § 922(g)(3) to restrict Mr. Hemani's Second Amendment rights. As such, the Court must affirm the district court's judgment dismissing the indictment against Mr. Hemani.

---

[2] The Government neglects to note that this law also applied to "common prostitutes" and both categories *may* be disarmed if they "go armed, and are not known to be peaceable and quiet persons[.]" *See* Act of Apr. 30, 1855, §§ 1-2, in 2 *The General Laws of the State of California, from 1850 to 1864,* 1076–1077 (Theodore H. Hitchell ed., 1865).

**III. *Daniels* was decided correctly, and *Rahimi* does not change this Court's analysis.**

Of course, the elephant in the room is how the recent decisions in *Rahimi* and *Daniels* affects Mr. Hemani's as-applied challenge to § 922(g)(3). The Government posits that *Daniels* was decided incorrectly by this Court, and given the recent remand, the issue deserved due consideration.

The Supreme Court remanded *Daniels* for consideration in light of its decision in *Rahimi*. As a threshold matter, this Court has held that a grant, vacate, remand ("GVR") from the Supreme Court "is not a final determination on the merits." *Kenemore v. Roy*, 690 F.3d 639, 642 (5th Cir. 2012). "A GVR does not bind the lower court to which the case is remanded; that court is free to determine whether its original decision is still correct in light of the changed circumstances or whether a different result is more appropriate." *Id.*

*Rahimi* and *Daniels* are two significantly distinctive cases. *Rahimi* addressed both a facial and as-applied constitutional challenge to 18 U.S.C. § 922(g)(8), which prohibits an individual subject to a domestic violence restraining order from possessing a firearm. *Rahimi*, at 1889.

*Daniels* was not a facial challenge to section 922(g)(3), and much of the Supreme Court's analysis in *Rahimi*, including its holding, dealt with whether § 922(g)(8) was constitutional on its face. *Id.* at 1898–99. The Supreme Court did find that this Court erred in requiring a "historic twin" rather than "historic analogue" in deciding the statute's constitutionality. *Id.* at 1903. Nonetheless, the Court could not have been more clear how limited its holding in *Rahimi*:

> [W]e conclude only this: An individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment.

*Id.*

Further, Justice Gorsuch aptly notes, "the case before us does not pose the question whether the challenged statute is always lawfully applied, or whether other statutes might be permissible, but only whether this one has *any* lawful scope. Nor should future litigants and courts read any more into our decision than that." *Rahimi*, at 1910 (Gorsuch, J. concurring) (emphasis in original).

*Daniels* suffered none of the same fatal flaws identified by the Supreme Court in *Rahimi* and is plainly distinguishable as an as-applied challenge rather than whether § 922(g)(3) is unconstitutional on its face.

Further, *Daniels* closely followed *Bruen's* instruction to find a "'representative historical analogue, not a historical twin.'" *Daniels*, at 342 (quoting *Bruen*, at 2133). The holding in *Daniels* did not rest on the Court's holding in *Rahimi*, and appropriately applied *Bruen's* test to hold that § 922(g)(3) was unconstitutional as applied to Daniels after a thorough historical review.

### A. Due process concerns persist in this case

*Daniels* is also distinguishable from *Rahimi's* holding based on due process considerations. The Supreme Court was explicit in its holding that the historical analogues it based its decision on and § 922(g)(8) "offered the accused significant procedural protections." *Rahimi*, at 1900. The Supreme Court further explained:

> we do not suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse, *see Heller*, 554 U.S., at 626, 128 S.Ct. 2783, we note that Section 922(g)(8) applies only once a court has found that the defendant 'represents a credible threat to the physical safety' of another. § 922(g)(8)(C)(i).

*Rahimi*, at 1901–02.

Section 922(g)(3) is not afforded these same procedural safeguards. An individual need not be found to be a danger to others by a court of

competent jurisdiction to be wholly prohibited from possessing firearms. In fact, the Government has taken the position in front of this Court recently that any user of marijuana under a lawful scheme, such as Colorado's, would be in violation of Section 922(g)(3) if they possessed a firearm. *See United States v. Connelly,* No. 23-50312, Oral Arg. at 10:03–10:50, [https://www.ca5.uscourts.gov/OralArgRecordings/23/23-50312_7-9-2024.mp3](https://www.ca5.uscourts.gov/OralArgRecordings/23/23-50312_7-9-2024.mp3) (last accessed July 17, 2024). The Government's breathtakingly broad position demonstrates the reality of the due process concerns implicated by Section 922(g)(3).

As this Court express in *Daniels*, section 922(g)(3)'s temporal nexus is vague. *Daniels*, at 348. Whereas § 922(g)(8)'s restriction is temporary and the temporal nexus is easily determined by when the individual is no longer subject to a restraining order. *Rahimi*, at 1902.

Mr. Hemani strongly disagrees with the Government's assertion that *Daniels* was decided incorrectly. The *Daniels* Court followed *Bruen's* mandate closely and concluded the Government failed to meet its burden of establishing a historical analogue to support § 922(g)(3)'s constitutionality as applied to Daniels. For the same reasons, the Court should hold that § 922(g)(3) is unconstitutional as applied to Mr. Hemani.

**IV. Even if *Daniels* is overturned, Mr. Hemani's as-applied challenge is distinguishable from *Daniels* and should be affirmed.**

Mr. Hemani is confident that the holding in *Daniels* will remain undisturbed despite remand from the Supreme Court. However, if the Court were to overturn *Daniels*, Mr. Hemani would still be able to show that § 922(g)(3) is unconstitutional as applied to the facts of his case.

Mr. Hemani's case is readily distinguishable from the facts of *Daniels*. In *Daniels*, officers found "several marihuana cigarette butts" and "two loaded firearms: a 9mm pistol and a semi-automatic rifle" is a vehicle. *Daniels* at 340. As such, the drugs and firearms were in close proximity to one another and within the area of immediate control or possession.

In Mr. Hemani's case, the Government alleged that the drugs and pistol were found in Mr. Hemani's parents' home, where Mr. Hemani lives. [ROA.293]. Like *Daniels*, Mr. Hemani was not questioned by law enforcement whether he was actively under the influence of any substance. [ROA.293]. Unlike an automobile where the right to privacy is significantly diminished, *California v. Carney*, 471 U.S. 386, 393 (1985), a "man's house is his castle" and his privacy expectations are at

their highest. *Lange v. California*, 594 U.S. 295, 310 (2021). Further distinguishing *Daniels* from the facts of Mr. Hemani's case is that the drugs and firearm were not in close proximity to each other when found. Finally, law enforcement found both a 9mm pistol and a semi-automatic rifle in *Daniels*. In Mr. Hemani's case, he possessed only a handgun, "the quintessential self-defense weapon." *Heller*, at 629.

The Supreme Court made clear in *Rahimi* that its decision did not foreclose future as-applied challenges to § 922(g)(8) or other statutes. The same should ring true if this Court ultimately overturns its prior decision in *Daniels*. An as-applied constitutional challenge requires a determination of whether the statute in question is unconstitutional as applied to the particular individual's case. Accordingly, even if *Daniels* is overturned, this Court should conclude that 18 U.S.C. § 922(g)(3) is unconstitutional as applied to Mr. Hemani's case.

## Conclusion

Based on the foregoing, the Court should hold 18 U.S.C. § 922(g)(3) unconstitutional as applied to Mr. Hemani and affirm the judgment of the district court.

Respectfully submitted,

/s/ Zachary L. Newland
Zachary L. Newland
Newland Legal, PLLC
P.O. Box 3610
Evergreen, Colorado 80437
(303) 948-1489
Zach@newlandlegal.com
TX Bar No. 24088967

/s/ David C. Boyer
David C. Boyer
Newland Legal, PLLC
P.O. Box 1413
Midlothian, Texas 76065
Tel: (469) 899-9664
David@newlandlegal.com
TX Bar No. 24136752

*Attorneys for Mr. Hemani*

**Certificate of Service**

I hereby certify that a true and correct copy of the foregoing Brief of Appellee was duly served on the United States via CM/ECF this 26th day of August 2024.

/s/ David C. Boyer

**Certificate of Compliance**

I hereby certify that this Brief of Appellee complies with Rule 32(a)(5) and 32(a)(7) of the Federal Rules of Appellate Procedure because:

1.     This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 4,532 words.

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Century Schoolbook font size 14.

/s/ David C. Boyer